UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CRIMINAL ACTION NO. 11-CR-42-KKC

UNITED STATES OF AMERICA,                                                                                           PLAINTIFF

v.                                        **OPINION AND ORDER**

STEVEN ANTHONY FRANKLIN,                                             DEFENDANT

\*\*\*\*     \*\*\*\*     \*\*\*\*     \*\*\*\*

This matter is before the Court on the Defendant's Motion to Suppress Evidence [DE 13]. The Magistrate Judge's Recommended Disposition [DE 24] recommends that the Court deny the motion. The Defendant objects to that recommendation. Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court must make a *de novo* determination of those portions of the Magistrate Judge's Recommended Disposition to which objection is made.

**I.     Background.**

The issue in this case is whether police officers violated the Defendant's Fourth Amendment rights when they entered his backyard, viewed him carrying a sawed-off shotgun, and seized the weapon from him.

The Defendant does not object to any of the facts found by the Magistrate Judge and, accordingly, the Court adopts those findings. In brief, there is no dispute that, when the police officers entered the Defendant's backyard, they were in pursuit of an individual suspected of stealing an automobile and fleeing from the scene after crashing the vehicle into a telephone pole. Lexington Police Officer Adam Ray and Sergeant Brian Ray followed footprints in the snow from the scene of the crash to the front door of the Defendant's house.

Sergeant Ray stood in the front of the house while Officer Ray went to the right rear corner of the home. Officers Christopher Burlile and Peres Lucka then arrived on the scene and also went to the back of the house, relieving Officer Ray who then went to the front of the house. After a few minutes, Burlile saw the Defendant exit the house through the back door with the sawed-off shotgun in his hand. Burlile took the gun from the Defendant and handcuffed him.

The Defendant is now charged with possession of an unregistered sawed-off shotgun. The indictment in this action does not charge him with any crime related to the stolen vehicle. The suspected car thief was found in the Defendant's residence. The Magistrate Judge determined that the officers' warrantless entry into the back of the house was justified by two exigent circumstances: 1) hot pursuit of a fleeing felon and 2) the need to prevent a suspect's escape.

**II.    Analysis**.

The Defendant objects, arguing that, for the hot-pursuit exception to apply, there must be a threat to public safety and that no such threat existed here. For this argument, the Defendant cites *Welsh v. Wisconsin*, 466 U.S. 740 (1984). However, that case does not hold that, in order for the "hot pursuit" exception to apply, there must be evidence of an additional threat to public safety other than the fleeing felon. In that case, the court treats the "hot pursuit" and "public safety" exceptions as two separate exceptions to the warrant requirement. *Id*. at 753. *See also United States v. Williams*, 354 F.3d 497, 503 (6th Cir.2003).

In *Welsh*, the Court held that the warrantless entry into the residence in that case could not be justified under either the "hot-pursuit" doctrine or under the theory that the defendant

posed a threat to public safety. *Id*. at 753. The Court found that the hot-pursuit doctrine was inapplicable because "there was no immediate or continuous pursuit" of the defendant from the scene of the crime. *Id*. at 753. Here, the Defendant does not dispute that there was an immediate and continuous pursuit of the suspected car thief.

*Welsh* does make clear that, in determining whether any exigent circumstances exists that justify a warrantless entry, courts should always consider the gravity of the underlying offense. *Id*. The Court determined that the suspected offense at issue in that case -- drunk driving-- was a "minor offense" and that exigent circumstances justifying a warrantless home entry should rarely be found in such cases. *Id.* Here, the suspected offense was car theft. That is not a "minor offense" but, as the Magistrate Judge found, a felony under Kentucky state law.

The Defendant also argues that, even if officers' warrantless entry into the backyard was excused because they were in hot pursuit of a fleeing felon or to prevent the suspect's escape, they were still required to knock and announce their presence before entering the backyard.

In support of this argument, the Defendant cites *Ingram v. City of Columbus*, 185 F.3d 579 (6th Cir. 1999) in which the court recognized that "officers who are in 'hot pursuit' *may* demonstrate exigent circumstances that excuse the knock and announce requirement." *Id*. at 591 (emphasis added). However, the case makes clear that a "hot-pursuit" situation does not provide a "per se exception" to the knock-and-announce requirement. *Id.*

Instead, even when in "hot pursuit" of a felon, to justify a failure to knock and announce before entering a residence, the police must reasonably suspect that knocking and announcing their presence would be 1) dangerous or futile, or 2) inhibit effective investigation

3

of the crime. *Id*. at 589-90. If the justification for failing to knock and announce is the officers' concern that the suspect may escape, the trial court must "find that the officers had a reasonable suspicion that announcing their presence would have allowed their suspect to escape." *Id*. at 590. The required showing is "not high" but "police should be required to make it whenever the reasonableness of a no-knock entry is challenged." *Id*. (citation omitted).

In *Ingram*, the court noted the officers did not assert they believed the fleeing suspect would escape. *Id.* at 590. The officers did not state whether they had a reasonable suspicion that announcing their presence at the residence at issue would have allowed the fleeing felon to escape. *Id*. Instead, the officers argued that "hot pursuit" should be a per se exception to the knock and announce requirement. *Id*. at 589. The court ruled that under the "unique circumstances" of the case, the officers had failed to set forth facts justifying their failure to knock and announce. *Id*. at 591.

Here, however, Officer Ray did testify on the record that the officers suspected the suspect may flee and that was the very reason they went to the back of the house before making contact by knocking on the door. [DE 23 at 34, 38]. Further, the officers' suspicion that the fleeing suspect may attempt to escape was reasonable. They were aware that the suspect stole a car from a pizza driver [DE 23 at 5]; fled from that scene traveling at a "high rate of speed," stopping only because he had wrecked the vehicle [DE 23 at 25]; and then again fled, this time from the scene of the wreck, and headed toward the backyard of some houses in a residential area [DE 23 at 25]. Officer Adams watched a video taken by a neighbor which showed the suspect actually running from the area. [DE 12 at 26]. As the Magistrate Judge found, the suspect ran up to one-and-one-half miles before the officers caught up with him.

4

The officers' suspicion that the suspect would again flee after the officers knocked on the door of the residence he entered was reasonable. As the Magistrate Judge found, the *only* reasonable inference is that the suspect was seeking to avoid detection.

"The ultimate touchstone of the Fourth Amendment…is 'reasonableness.'" *Michigan v. Fisher*, 130 S.Ct. 546, 548 (2009)(citation omitted). In this case, the officers had a reasonable suspicion that the fleeing felon they were chasing would continue to flee when he became aware of their presence. As the Magistrate Judge found, faced with that scenario, the officers made a measured entry into the curtilage of the Defendant's home, not into the residence itself.

There is no evidence that the officers entered the backyard with the intent of entering the house or to look into windows or for any purpose other than securing the perimeter prior to knocking on the front door. Officer Burlile testified that, for the few minutes he was at the back corner of the house before the Defendant exited with a sawed-off shotgun, he was "more or less watching the door." [DE 23 at 7, 9, 10]. The Magistrate Judge correctly found the officers were lawfully present at the rear corner of the Defendant's home.

As to the Magistrate Judge's finding that the warrantless entry into the Defendant's backyard was justified by the need to prevent a suspect's escape, the Defendant objects arguing that, in order for this exception to apply, there must be evidence that a suspect's escape is imminent and there was no such evidence here. To the extent that such evidence is required, it exists here. As set forth above, the officers were in "hot pursuit" of a fleeing felon and had a reasonable suspicion that he would flee again as soon as he became aware of their presence.

### III. Conclusion.

For all these reasons, the Court hereby ORDERS as follows:

1) the Court ADOPTS the Magistrate Judge's Recommended Disposition [DE 24];

2) for the reasons stated in this Opinion and in the Recommended Disposition, the Defendant's Motion to Suppress Evidence [DE 13] is DENIED; and

3) this matter is set for a jury trial on **December 12, 2011 at 9:00 a.m.** Counsel to be present at 8:30 a.m.

Dated this 18th day of November, 2011.

Signed By:
*Karen K. Caldwell*
United States District Judge